246 N.J. Super. 55 (1990)
586 A.2d 867
BETTY J. BRUBAKER AND DEMOCRATIC COMMITTEE OF SHIP BOTTOM, PLAINTIFFS,
v.
BOROUGH OF SHIP BOTTOM AND PATRICIA C. JEFFREY (CLERK OF THE BOROUGH OF SHIP BOTTOM), DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided December 10, 1990.
Edmund P. Glasner for plaintiffs.
*56 James E. Bishop for defendants (Shackleton, Hazeltine & Bishop, attorneys).
SERPENTELLI, A.J.S.C.
Once again the Municipal Vacancy Law, N.J.S.A. 40A:16-1 et seq., has spawned a novel issue for this court to decide. May a political party which is given the right under the vacancy law to submit the names of three nominees to fill the vacated position of an incumbent party member, submit only one name because of the alleged unavailability of willing candidates and then make the appointment based on the governing body's failure to act on the name submitted?
On August 28, 1990, Isabella M. McMasters, an elected Democratic councilwoman, resigned from her position. Thereafter, on or about September 11, 1990, Mrs. McMasters and her husband, on behalf of the Ship Bottom Democratic Committee, submitted a letter to the Mayor and Council of the Borough of Ship Bottom recommending that plaintiff, Betty J. Brubaker, be appointed for the unexpired term of the vacancy. Betty Brubaker is a registered Democrat and a resident of Ship Bottom.
The mayor and council refused to act on the name submitted. On September 30, 1990, plaintiff Democratic Committee of Ship Bottom appointed Betty J. Brubaker to fill the vacated Democratic position and demanded that defendants administer the oath of office. Defendants refused to do so on the ground that the Democratic Committee had failed to submit three nominees for consideration by the governing body as required by N.J.S.A. 40A:16-11. This action ensued.
Plaintiffs contend that a diligent good-faith search was made to locate three registered Democrats residing in Ship Bottom who would be willing to serve for the remainder of the unexpired council term but that plaintiff, Brubaker, was the only individual willing to fill the seat. Plaintiffs assert that the court should not allow a legal technicality to block the minority party from filling the vacancy and thus deny the residents of *57 Ship Bottom full representation in local government. Defendants counter that N.J.S.A. 40A:16-11 and the legislative history interpreting it mandate the submission of three names before the governing body is obligated to fill a vacancy. Defendants argue that allowing plaintiffs to appoint their sole nominee contravenes the legislative policy of limiting the circumstances in which a non-elected person is appointed to an elected position.
A review of the legislative history of the Municipal Vacancy Law is appropriate. Before enactment of Chapter 213 of the Laws of 1975, the procedure for filling a vacancy was addressed separately in various statutes pertaining to different forms of municipal government. Chapter 213 consolidated these laws in a statute known as the Municipal Governing Body Vacancy Law. N.J.S.A. 40:45B-1 et seq. The statute set forth detailed guidelines for filling a vacancy. Those guidelines need not be reviewed here except to note that N.J.S.A. 40:45B-3 provided that if the previous incumbent was the nominee of a political party, any appointment to that position shall be from the same political party. If the governing body failed to act, the position remained vacant until an election was held. Chapter 11 of the Laws of 1978 made technical amendments to the Municipal Governing Body Vacancy Law, none of which bears upon the controversy before the court.
By passage of Chapter 83 of the Laws of 1979, the current Municipal Vacancy Law was established (N.J.S.A. 40A:16-1 et seq.) and the Municipal Governing Body Vacancy Law was repealed. The new law again sought to comprehensively regulate the process of filling municipal vacancies. As relevant here, it provided that to fill a vacant seat where the incumbent had been elected to an office as the nominee of a political party, the municipal committee of the incumbent's party shall submit to the governing body the names of "three" nominees for the selection of a successor to the office within 15 days of the vacancy. The governing body was required to appoint one of the three nominees to fill the vacant seat within 30 days of the *58 date of the vacancy. If the municipal committee of the incumbent's political party failed to submit the names of the nominees within 15 days, the statute provided that the governing body "shall" appoint a successor from the incumbent's political party within 30 days of the occurrence of the vacancy. N.J.S.A. 40A:16-11.
Chapter 101 of the Laws of 1980 again amended the Municipal Vacancy Law by inserting the word "may" in place of the word "shall" as it pertains to the governing body's obligation to appoint one of the three nominees suggested by the incumbent's political party. In so doing, the governing body's obligation to appoint one of the nominees became optional instead of mandatory. Cf. Galloway Tp. Republican League v. White, 171 N.J. Super. 576, 410 A.2d 276 (App.Div. 1980), certif. den. 82 N.J. 301, 412 A.2d 807 (1980).
Most recently, N.J.S.A. 40A:16-11 was again amended by Chapter 57 of the Laws of 1990. This amendment reinstates the word "shall" (as contained in the 1979 law) in place of the word "may" (as contained in the 1980 law) as it relates to the obligation of the governing body to appoint one of the three names submitted. It also provides that if the governing body fails to make the selection within the specified time period, the municipal committee of the incumbent's political party shall then appoint one of those three nominees to the vacancy.
This review of legislative history clearly demonstrates an effort by the Legislature to limit the discretion of the governing body in the vacancy process while at the same time preventing the political party with the power of nomination from dictating the outcome. The 1975 version of the vacancy law required only that the person appointed shall be of the same political party as the incumbent. The 1979 amendment added the provision that the selection must be made from among three names submitted by the incumbent's party. If the names were submitted within 15 days of the occurrence of the vacancy, the governing body was mandated to choose from among *59 the three. The governing body was allowed discretion to select someone else from the incumbent's party only if the three names were not submitted within the required time.
The Senate and Assembly statements attached to the 1979 amendment described the "apparent intent" of the legislation as an effort to:
limit the ability of the majority party to weaken minority representation on the body by choosing individuals with limited abilities or with political principles compatible with those of the majority party. [Senate statement to Senate Bill 1217 (1978); Assembly statement to Senate Bill 1217 (1979)].
In 1980, the Legislature modified the Municipal Vacancy Law in only one respect. It returned to the 1975 concept that the obligation of the governing body to fill the vacancy was discretionary. To that extent only, it expanded the discretion but it continued all the provisions of the 1979 amendment in the event the governing body chose to make the appointment. Apparently, the 1980 amendment led to some unsatisfactory results brought about by the majority party's ability to exercise the option to appoint or to await the next general election depending on how it evaluated its political advantage. This court dealt with one of those circumstances in Smith v. Ghigliotty, 219 N.J. Super. 231, 530 A.2d 68 (Law Div. 1987), aff'd 219 N.J. Super. 11, 529 A.2d 1000 (App.Div. 1987). In Smith, several council members refused to attend a special meeting thereby precluding a quorum and preventing the governing body from deciding whether to fill a vacancy. Reportedly, similar abuses came to the attention of the Legislature and the 1990 amendment followed.
However, it must be noted that the 1990 amendment is limited in its purpose. It seeks to restore the requirement contained in the 1979 amendment that the governing body must make a selection from among the three names submitted. That is, it reverts from the optional power to select contained in the 1980 amendment to the mandatory power to select contained in the 1979 law. It also deals with a possible refusal to select by giving the incumbent's party the power of appointment if the *60 governing body does not act. The statements annexed to the 1990 amendment clearly express its purpose:
Under current law, within 30 days of the occurrence of such a vacancy, the governing body of the municipality has the option of selecting one of the three persons recommended to fill the office by the municipal committee of the political party that nominated the incumbent. If the governing body does not choose one of the persons recommended within the allotted time period, the office remains unfilled until the next election.
This bill requires the municipal governing body, within thirty days of the occurrence of the vacancy, to select one of the three persons recommended by the municipal committee. The bill removes the ability of the remaining members of the governing body to preserve the vacancy and allow the governing body to be composed of fewer members than the law authorizes. [Assembly statement to Assembly Bill 2592 (1990); Senate statement to Assembly Bill 2592 (1990)].
Most significantly, the 1990 amendment does not contemplate the circumstances in this case  namely, the failure of the incumbent's party to submit three names from which the governing body can choose. In fact, since the three-name requirement entered the law in 1979, it has been left unchanged by any subsequent amendment. The requirement strikes a balance between totally removing any governing body discretion in the appointment process and leaving the governing body free to maneuver the vacancy to its advantage. As the law now stands, the governing body must select from among the three names submitted or risk abdicating the choice to the incumbent's party. On the other hand, the incumbent's party cannot hand pick the successor any more than the governing body can. It is required to provide three names so that the governing body may exercise some freedom in designating a new member of its own body. Indeed, even if the committee has the opportunity to fill the vacancy because of the governing body's failure to act, the committee must select one of "the three nominees" previously submitted.
Plaintiffs argue that a judicial exception should be engrafted on the law which would address those situations in which it is alleged that three nominees cannot be found. Such an approach could mire the court in interminable hearings to verify *61 that each and every member of the incumbent's political party honestly has declined the invitation to serve. The proceedings alone, not to mention the requisite pretrial discovery, could carry on beyond the next general election at which the vacancy could be filled.
Ever since the three-nominee provision entered our law, the legislative statements accompanying the statutes have made it clear that the scriveners understood that condition. The statements consistently refer to a plural nominee requirement. It may be that the Legislature never contemplated the possibility that three willing people in either major party could not be found. Perhaps that thought is too foreign to imagine for those involved in a political world. But, whether or not it was considered, if it is to be addressed, it must be done by amendment to the statute.
Finally, it should be noted that the Legislature did contemplate the possibility that the incumbent's party might not submit any names within the time prescribed. N.J.S.A. 40A:16-11. That statute provides that if the "names of the nominees" are not submitted, the governing body has the option of filling the position by appointment of a successor from the same political party as the incumbent. To that extent, the Legislature has dealt with a failure to nominate. An argument could be fashioned that the failure to submit three names should be treated in the same manner as the failure to submit any names. However, if that provision is not dispositive of an alleged inability to find three nominees, it is not for the court to rewrite the statute. It is up to the Legislature to determine whether it wishes to amend the existing law.
Plaintiffs' complaint is dismissed.