607 A.2d 1335

HERBERT KUKASCH (AS CHAIRMAN OF THE HOLMDEL TOWNSHIP REPUBLICAN MUNICIPAL COMMITTEE) AND THE HOLMDEL TOWNSHIP REPUBLICAN MUNICIPAL COMMITTEE, PLAINTIFFS–RESPONDENTS, v. ERNEST COTE (MAYOR OF HOLMDEL), GARY AUMILLER AND CAROLE BALMER (HOLMDEL TOWNSHIP COMMITTEE CHAIRPERSONS), THE HOLMDEL TOWNSHIP COMMITTEE AND WILLIAM JAROCKI, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 28, 1992—Decided June 5, 1992.

Before Judges O'BRIEN, HAVEY and CONLEY.

*Joseph D. Youssouf* argued the cause for appellants (*Joseph D. Youssouf* on the brief).

*Herbert F. Lawrence* argued the cause for respondents (*Sarah B. Biser* on the brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

The Municipal Vacancy Law, *N.J.S.A.* 40A:16–11 to –23, provides that if the incumbent whose office has become vacant was elected to office as the nominee of a political party, the municipal committee of the political party of which the incumbent was the nominee shall, "no later than 15 days after the occurrence of the vacancy, present to the governing body the names of three nominees for the selection of a successor to fill the vacancy." *N.J.S.A.* 40A:16–11. The issue raised by this appeal is whether, when one of the three nominees submitted by the municipal committee declines to serve after the 15–day period has expired, the governing body is required to select one of the nominees remaining on the municipal committee's list. The trial court concluded that the act required the defendant Township Committee of Holmdel Township (governing body) to select one of the two remaining nominees, and vacated the appointment by the governing body of defendant William Jarocki, whose name was not on the list. We agree with the trial court and affirm.

On December 13, 1991, township committee member Cornelius Elmer McCaffrey resigned. McCaffrey had been elected to the governing body as a nominee of the Republican Party. On December 27, 1991, plaintiff municipal committee submitted to the governing body the names of Robert Giannone, Malcolm Gropper and Joseph Wahl as nominees to fill McCaffrey's vacancy. The governing body selected one of the nominees, Joseph Wahl. On January 13, 1992, Wahl informed the governing body that he would not accept appointment, and on that date the governing body appointed William Jarocki (a Republican but not named on the list) to fill the seat vacated by McCaffrey.

The municipal committee responded to the appointment of Jarocki by letter dated January 15, 1992, advising that since the governing body had failed to appoint one of the three nominees on its list within the time prescribed by *N.J.S.A.* 40A:16–11, the municipal committee had selected Robert Giannone to fill the vacancy. The governing body ignored the letter and plaintiffs thereupon filed the present action in the Law Division seeking to invalidate Jarocki's appointment and a declaration that Giannone was the "validly appointed replacement" to fill the vacancy on the governing body. The trial court vacated the appointment of Jarocki and directed the governing body to select a successor from the two remaining names on the list submitted by the municipal committee. The court held that "in a case such as the one at bar where the nominee appointed to fill the vacancy declines to accept the position, the Township Committee must make another selection from the names remaining on the list submitted by the municipal committee." The court reasoned that this procedure:

harmonizes to the best extent possible the policy of filling vacancies as quickly as possible and the intent of the Legislature to allow the municipal committee to delineate the pool of applicants to fill a vacancy where the incumbent was a nominee of a political party. In addition, this procedure leaves the final selection to the township committee which is also in conformance with the statute.

We agree.

*N.J.S.A.* 40A:16–11 provides in pertinent part:

Appointment to fill vacancy where incumbent was nominee of a political party; time to fill vacancy.

If the incumbent whose office has become vacant was elected to office as the nominee of a political party, the municipal committee of the political party of which the incumbent was the nominee shall, no later than 15 days after the occurrence of the vacancy, present to the governing body the names of three nominees for the selection of a successor to fill the vacancy. The governing body shall, within 30 days after the occurrence of the vacancy, appoint one of the nominees as the successor to fill the vacancy. If the governing body fails to appoint one of the nominees within the time prescribed herein, the municipal committee that named the three nominees shall, within the next 15 days, appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately. If the municipal committee which nominated the incumbent fails to submit the names of the nominees within the

time prescribed herein, the governing body may, within the next 15 days, fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant.

The municipal committee's obligation under the statute is plain and unambiguous. It must submit its list of three nominees to the governing body within 15 days of the vacancy. Here, the municipal committee satisfied that requirement by submitting the list of three nominees on December 27, 1991, 14 days after McCaffrey resigned. Upon the municipal committee's compliance with the statute, the governing body was required, within 15 days after the occurrence of the vacancy, to select one of the nominees offered by the municipal committee. It is only when the municipal committee "fails to submit the names of the nominees" within the time prescribed that the governing body may fill the vacancy with someone other than those named on the municipal committee's list. Since the municipal committee here submitted three names, the governing body had no discretion other than to appoint one of the names submitted by the municipal committee.

■ Defendants argue that it had the right to appoint Jarocki because, once Wahl (one of the nominees submitted by the municipal committee) declined to serve, the municipal committee's list was "void." They reason that the law "literally allows the governing body to choose from a list of three[,]" and thus, "the refusal of one of the three nominees to accept appointment voided the original list." In reaching that conclusion, defendants rely on an observation found in *Brubaker v. Borough of Ship Bottom*, 246 *N.J.Super.* 55, 61, 586 *A*.2d 867 (Law Div. 1990), that "[a]n argument could be fashioned that the failure to submit three names should be treated in the same manner as the failure to submit any names."

We reject defendants' argument. Firstly, the passage from *Brubaker* is *dictum*, and must be understood in the context of the facts in that case. There the issue was whether the Democratic Municipal Committee satisfied the statute by submitting the name of only one nominee to the governing body.

246 *N.J.Super.* at 56, 586 *A.*2d 867. The municipal committee did so because it could not locate more than one Democrat in the municipality willing to serve for the remainder of the unexpired term. *Id.* In concluding that submission of only one nominee did not satisfy the statute, Judge Serpentelli held that he was without authority to carve an exception to the clear statutory mandate that three nominees be submitted to the governing body. *Id.* at 60–61, 586 *A.*2d 867. *Brubaker* does not address the issue here: whether, when the municipal committee satisfies the three-nominee provision, the list is deemed nullified because one of the nominees thereafter refuses to serve. As stated, we are of the view that the statutory language is clear. When the municipal committee satisfies the statutory requirement by submitting three nominees, its list is not nullified by a subsequent declination to serve by one of the nominees.

Our conclusion is supported by the legislative history of the act, discussed at length in *Brubaker. See* 246 *N.J.Super.* at 57–60, 586 *A.*2d 867. Suffice to say here that prior to 1979, the governing body had the discretion to either fill a vacancy with any nominee from the political party of the incumbent, or leave the office vacant until an election was held. *See id.* at 57, 586 *A.*2d 867. *See also N.J.S.A.* 40:45B–3, now repealed. By *L.* 1979, *c.* 83, the Legislature adopted the three-nominee scheme presently in place, and mandated the governing body to appoint one of three nominees. *N.J.S.A.* 40A:16–11. The legislative statements attached to the 1979 law reflect the Legislative intent to:

> limit the ability of the majority party to weaken minority representation on the body by choosing individuals with limited abilities or with political principles compatible with those of the majority party. [Senate statement to *Senate Bill* 1217 (1978); Assembly statement to *Senate Bill* 1217 (1979).]

*N.J.S.A.* 40A:16–11, by *L.* 1980, *c.* 101, was amended to provide that the governing body "may," rather than "shall" appoint one of the three nominees submitted by the municipal committee. *Brubaker,* 246 *N.J.Super.* at 58, 586 *A.*2d 867. However, by *L.*

1990, *c.* 57, the statute was again amended reinstating the word "shall," so that the present statutory scheme mandates appointment by the governing body of one of the three names submitted by the municipal committee. The purpose of this amendment was to remove "the ability of the remaining members of the governing body to preserve the vacancy and allow the governing body to be composed of fewer members than the law authorizes." *Brubaker,* 246 *N.J.Super.* at 60, 586 *A.*2d 867 (quoting Senate and Assembly statements to *Assembly Bill* 2592 (1990)).

As Judge Serpentelli observed in *Brubaker,* what is apparent from this legislative history is that the present statute:

strikes a balance between totally removing any governing body discretion in the appointment process and leaving the governing body free to maneuver the vacancy to its advantage. As the law now stands, the governing body must select from among the three names submitted or risk abdicating the choice to the incumbent's party. On the other hand, the incumbent's party cannot hand pick the successor any more than the governing body can. It is required to provide three names so that the governing body may exercise some freedom in designating a new member of its own body. [246 *N.J.Super.* at 60, 586 *A.*2d 867.]

Defendants' interpretation of the statute would create the very imbalance corrected by the Legislature. The municipal committee's right to propose nominees, whose abilities and allegiance to the party's principles are unquestioned, *see* Assembly statement to *Senate Bill* 1217, would be negated simply because of an event over which the municipal committee had no control. We cannot conceive, for example, the Legislature intended that if one of the nominees died or moved out of town after the list was submitted, the municipal committee shall be deemed to have failed "to submit the names of the nominees" within the time prescribed by the statute. Such a result not only frustrates the municipal committee's initial right to name the nominees based on ability and political allegiance, but it provides a windfall to the governing body by giving it unfettered discretion to choose someone whose abilities are suspect or whose political views are incompatible with that of the political party represented by the municipal committee. In

short, were we to negate the remaining list of candidates because of a fortuitous event, unexpected by the municipal committee, we would in effect be undermining the legislative policies pronounced by the 1979 and 1990 amendments to *N.J.S.A.* 40A:16–11.

Defendants nevertheless argue that the trial court's decision here may foster abuse of the vacancy-filling process. They assert that the decision may permit the municipal committee, by subterfuge, to submit the names of three nominees knowing that two will decline to serve, thereby compelling the governing body to select the one remaining nominee. Such a result, defendants urge, would clearly frustrate the legislative purpose of giving the governing body the ultimate discretion in choosing the nominee.

The simple answer to defendants' concern is that this is not such a case. It is undisputed that when Wahl's name was submitted by the municipal committee as part of its three-nominee list, he was qualified and willing to serve. The evidence suggests that because of the newly-elected mayor's decision to double the Township Committee meeting dates and change the meeting night, Wahl had second thoughts about serving on the governing body. There is absolutely no showing of subterfuge or manipulation of the vacancy-filling process on the part of the municipal committee. We therefore need not decide whether a different result would be mandated if defendants had demonstrated such conduct on the part of the municipal committee.

Affirmed.