NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1759-19

LINDEN DEMOCRATIC
COMMITTEE and PAUL
COATES, JR.,

    Plaintiffs-Respondents/
    Cross-Appellants,

v.

CITY OF LINDEN and CITY
OF LINDEN MUNICIPAL
COUNCIL,

    Defendants-Appellants/
    Cross-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 17, 2021**
>
> **APPELLATE DIVISION**

Argued April 12, 2021 – Decided August 17, 2021

Before Judges Messano, Hoffman, and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000019-19.

Victoria A. Lucido argued the cause for appellants/cross-respondents (Aloia Law Firm, LLC, attorneys; Brian J. Aloia, of counsel and on the briefs; Victoria A. Lucido, on the briefs).

Louis N. Rainone argued the cause for respondents/cross-appellants (Rainone Coughlin Minchello, LLC, attorneys; David L. Minchello, of

counsel and on the briefs; Brian P. Trelease and Matthew R. Tavares, on the briefs).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

This appeal requires us to construe seemingly ambiguous provisions of the Municipal Vacancy Law, N.J.S.A. 40A:16-1 to -23 (the Vacancy Law). Plaintiff Paul Coates, Jr., was one of three people whose names were submitted by the Linden Democratic Committee (the Committee) to fill the unexpired term of the 8th Ward councilmember in the City of Linden (the City). That council seat became vacant when the incumbent successfully ran for and was elected council president. The governing body voted not to appoint any of the three individuals and resolved that the seat remain vacant pursuant to N.J.S.A. 40A:16-5(b) (Section 5). Relying on N.J.S.A. 40A:16-11 (Section 11), the Committee appointed and swore in Coates as councilmember for the 8th Ward.

When the City refused to seat Coates, he and the Committee (collectively, plaintiffs) filed suit against the City and municipal council (collectively, defendants) seeking, among other things, an order requiring the City council to seat Coates as the 8th Ward councilmember. Plaintiffs also alleged a violation of the New Jersey Civil Rights Act (the CRA), N.J.S.A. 10:6-1 to -2.

A-1759-19

We need not detail the procedural history that ensued because it is irrelevant to the issues now under consideration. It suffices to say that on May 14, 2019, the judge ordered that Coates "be immediately seated as the 8th Ward Councilman for the City of Linden."[1] Plaintiffs subsequently moved for summary judgment on the CRA claim, and defendants cross-moved for summary judgment dismissing that count of the complaint. The judge concluded defendants denied Coates his substantive due process right to be seated as the 8th Ward councilmember, and her September 4, 2019 order granted plaintiffs' motion and awarded them counsel fees.

Plaintiffs subsequently filed a certification seeking an award of $209,217.87 in counsel fees and costs. They argued a thirty-five percent fee enhancement was appropriate pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995), due to the complexity of the matter, the significance of the result achieved, and the broad public interest served by the litigation. Defendants filed opposition, and, on November 18, 2019, the judge entered an order awarding plaintiffs' attorneys' fees of $110,236.50, and costs of $451.20. She stayed the award of fees and costs pending this appeal.

---

[1] We take judicial notice, see N.J.R.E. 202(b), that Coates lost the Democratic primary election one month later in June 2019.

A-1759-19

Defendants argue the May 2019 order awarding Coates the vacant 8th Ward council seat was based on a misinterpretation of the Vacancy Law, because pursuant to Section 5, the governing body has discretion to fill the vacancy or leave the seat vacant until the next general election. Defendants further contend that regardless, we must reverse the September 2019 order since the refusal to seat Coates did "not rise to the level of a substantive due process violation," and thus defendants did not violate the CRA. As a result, defendants argue we must reverse the November 2019 order awarding plaintiffs fees and costs under the CRA.

Plaintiffs cross-appeal. They argue the judge mistakenly exercised her discretion in denying a fee enhancement.

Having considered these arguments in light of the record and applicable legal principles, we reverse on the appeal and dismiss the cross-appeal as moot.

I.

For our purposes, the record is undisputed. The City is incorporated and operates under the mayor-council form of government pursuant to N.J.S.A. 40A:61-1 to -7. At all times relevant to this appeal, the City was divided into ten wards, with a councilmember elected from each ward to serve a three-year term, and the council president elected on an at-large basis to serve a four-year

term. General elections for council seats between the nominees of their respective political parties were held each November.

In 2017, the voters re-elected Democrat Michelle Yamakaitis as the 8th Ward councilmember; her term would have expired on December 31, 2020. However, in November 2018, the voters elected Yamakaitis council president. She resigned her 8th Ward council seat effective midnight December 31, 2018, to assume the responsibilities of council president on January 1, 2019, thus creating the vacancy at issue.

On December 31, 2018, the City Clerk notified Nicholas P. Scutari, chairman of the Committee, of Yamakaitis' resignation. Citing the Vacancy Law, the letter stated, "The procedure for fill [sic] said vacancy provides a roll [sic] for the municipal committee. Please refer to N.J.S.A. 40A:16-5, for the process and the time lines it establishes." However, Section 5 of the Vacancy Law provides no role for the political party committee in filling the vacancy. In response to the City Clerk, Scutari wrote that the Committee met and recommended three nominees to fill the vacant seat, one of whom was Coates. Although not cited by Scutari, he forwarded the three names based on Section 11, which we discuss in more detail below.

At its meeting on January 15, 2019, the council heard objections from several members of the public regarding the three nominees selected by the

Committee. It adopted a resolution that declared pursuant to Section 5, the 8th Ward seat would remain vacant and not be temporarily filled by appointment of the governing body. On January 28, 2019, the City's mayor issued a letter to all councilmembers and department heads stating that any candidate selected and sworn in by the Committee would not be recognized as the 8th Ward councilmember.

On February 6, 2019, the Committee appointed and swore in Coates to fill the vacant 8th Ward seat. After Scutari advised the City Clerk that Coates was appointed by the Committee and sworn in as the 8th Ward councilmember, the Municipal Attorney responded in writing. He noted that the council adopted a resolution "expressing its intent to maintain a vacancy until the 2019 [g]eneral [e]lection as permitted by N.J.S.A. 40A:16-5(b)," and it respectfully denied the Committee's request to "afford [Coates] all the rights and privileges associated with [the] position" of ward councilperson. Plaintiffs then filed their verified complaint and order to show cause.

II.

Defendants contend Section 5 clearly requires that a vacancy in an unexpired council term "shall be filled . . . at the next general election," although "[t]he governing body <u>may</u> fill the vacancy temporarily by appointment <u>as hereinafter provided</u>." N.J.S.A. 40A:16-5(b) (emphases

6

added). According to defendants, Section 11, and the party committee's role in filling any vacancy, is not triggered unless the governing body first chooses, in its discretion, to temporarily fill the seat. They argue that any other construction renders Section 5 superfluous.

Defendants also contend our decision in Galloway Township Republican League v. White, controls the issue. 171 N.J. Super. 576 (App. Div. 1980). There, construing Section 5(b), we said, "[T]he determination to fill or not to fill the vacancy for the interim period between the occurrence of the vacancy and the general election at which the permanent successor is selected is a matter lying within the sound discretion of the governing body." Id. at 579.

Plaintiffs, however, contend that the language of Section 11 is clear and unambiguous. "If the incumbent whose office has become vacant was elected to office as the nominee of a political party . . . [t]he governing body shall, within [thirty] days after the occurrence of the vacancy, appoint one of the [party committee's] nominees as the successor to fill the vacancy." N.J.S.A. 40A:16-11 (emphases added). If the governing body fails to act, "the municipal committee that named the three nominees shall . . . appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately." Ibid. (emphases added). Defendants argue their interpretation is consistent with the fundamental purposes of the Vacancy Law

to swiftly fill vacancies and avoid a situation where one political party, perhaps the majority party, could through inaction deny the other party a seat it rightfully earned in the prior general election.

### A.

"In matters of statutory interpretation, our review is de novo." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017) (citing Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)). We apply well-known principles and tenets of statutory construction to guide our review.

"When we interpret a statute, we strive to effectuate the Legislature's intent." Finkelman v. Nat'l Football League, 236 N.J. 280, 289 (2019) (citing Cashin v. Bello, 223 N.J. 328, 335 (2015); DiProspero v. Penn, 183 N.J. 477, 492 (2005)); see also Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) ("[O]ur basic rules of statutory interpretation recognize that not every statute is clear, and in case of ambiguity, our guiding light is the Legislature's intent."). "[T]he best indicator of that intent is the statutory language," which should be given its "ordinary meaning and significance." DiProspero, 183 N.J. at 492 (first citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003), then citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). "We construe the words of a statute 'in context with related provisions so as to give sense to the legislation as a whole.'" Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018)

(quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 570 (2017)).

"If the plain language leads to a clear and unambiguous result, then [the] interpretative process is over." Finkelman, 236 N.J. at 289 (alteration in original) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). "The Court 'may turn to extrinsic evidence [of legislative intent], "including legislative history [and] committee reports"' when the statutory language is ambiguous." Ibid. (alterations in original) (quoting DiProspero, 183 N.J. at 492–93). "Such ambiguity can arise when a statute 'is subject to varying plausible interpretations,' or when literal interpretation of the statute would lead to a result that is inherently absurd or at odds with either public policy or the overarching statutory scheme of which it is a part." Id. at 289–90 (quoting Cashin, 223 N.J. at 336).

A court may "draw inferences based on the statute's overall structure and composition and may consider the entire legislative scheme of which [the statute] is a part." MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 318 (App. Div.) (alteration in original) (quoting State v. Twiggs, 233 N.J. 513, 532 (2018)), certif. denied, 244 N.J. 243 (2020). "[W]hen we are faced with ambiguity in a statute, we should consider the legislative intent animating the entire statutory scheme of which

the specific provision is a part." Correa, 458 N.J. Super. at 579–80. "[S]tatutes that deal with the same matter or subject should be read in pari materia and construed together as a unitary and harmonious whole." MasTec Renewables, 462 N.J. Super. at 318 (alteration in original) (quoting Nw. Bergen Cnty. Utils. Auth. v. Donovan, 226 N.J. 432, 444 (2016)). "A court must make every effort to avoid rendering any part of a statute inoperative, superfluous or meaningless." Ibid. (citing Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013)).

With these principles in mind, we turn to the provisions of the Vacancy Law at issue.

B.

Prior to the 1979 passage of the Vacancy Law, both the Senate and Assembly Committees said it was intended to "address certain ambiguities and difficulties in the current legislation," i.e., the Municipal Governing Body Vacancy Law, N.J.S.A. 40:45B-1 to -6, and "provide a more comprehensive approach to the filling of municipal vacancies." S. Cnty. & Mun. Gov't Comm. Statement to S. 1217 1 (Dec. 4, 1978); Assemb. Mun. Gov't Comm. Statement to S. 1217 1 (Jan. 22, 1979) (the Committee Reports).[2] Two of the

---

[2] The Vacancy Law specifically repealed the Municipal Governing Body Vacancy Law. See N.J.S.A. 40A:16-23.

legislation's "guiding principles" were: "[v]acancies [were] to be filled as quickly as possible" and "[a]ppointments to fill vacancies should be . . . expeditiously made, and should not be used to thwart minority representation." Ibid.

From inception, the Vacancy Law provided two tracks to fill vacancies depending on whether the municipality elected members of its governing body in "regular municipal elections" or "general elections." L. 1979, c. 83, § 1; see N.J.S.A. 40A:16-4 and 16-5; see also 34 N.J. Practice, Local Government Law § 7.6, at 238 (Michael A. Pane, Jr.) (4th ed. 2007) ("The law provides completely different standards for filling vacancies in those municipalities holding 'regular municipal elections' and in those municipalities holding 'general elections.'"). Neither term is defined in the Vacancy Law.[3] However, the Uniform Nonpartisan Elections Law (UNPEL), N.J.S.A. 40:45-5 to -21, enacted in 1981, originally allowed municipalities to conduct nonpartisan

---

[3] N.J.S.A. 19:1-1 defines a "'[m]unicipal election' [as] an election to be held in and for a single municipality only, at regular intervals," and a "'[g]eneral election' [as] the annual election to be held on the first Tuesday after the first Monday in November." Primary elections, open only to members of a political party, see N.J.S.A. 19:23-45, are neither. See Seligson v. De Bruin, 174 N.J. Super. 60, 68–69 (Law Div. 1980) (discussing these terms and their different meanings).

11

"regular municipal elections . . . on the second Tuesday in May."  L. 1981, c. 379, § 2; N.J.S.A. 40:45-6 (1981).[4]

Each track then branches again, depending on whether the vacancy was occasioned by the absence of an incumbent member of the governing body elected as nominee of a political party, N.J.S.A. 40A:16-11, or not, N.J.S.A. 40A:16-12.  The Vacancy Law thus provided similar, but not identical, procedures for filling vacancies when the incumbent had been elected in a nonpartisan May election — N.J.S.A. 40A:16-4 and -12 — or as the representative of his or her political party in the November general election, N.J.S.A. 40A:16-5 and -11.  In this case, we primarily focus on these latter provisions.

Section 5 provides:

> Whenever a vacancy occurs . . . in the membership of the governing body of a municipality holding general elections, the vacancy shall be filled in the following manner:
>
> a. If the vacancy occurs any time subsequent to September 1 of the next-to-the last year and up to the expiration of the term of the officer whose office has become vacant, the office may be filled

---

[4]  The UNPEL was amended, effective January 2011, to permit a municipality to conduct a nonpartisan "regular municipal election" on the same day as the "general election" in November.  See L. 2009, c. 196, § 1; N.J.S.A. 40:45-7.1(a).

> for its unexpired term by appointment by the governing body as hereinafter provided;
>
> b. If the vacancy occurs at any other time, the vacancy shall be filled for its unexpired term at the next general election to be held not less than [sixty] days after the occurrence of the vacancy. The governing body may fill the vacancy temporarily by appointment as hereinafter provided.
>
> [N.J.S.A. 40A:16-5 (emphases added).][5]

Under either subsection, it would be possible for a council seat to remain vacant through the governing body's inaction for approximately sixteen months, i.e., the period between September 1 of one year and January 1 of the year following the next November general election.

Section 11, which plaintiffs relied on in the Chancery Division and now again before us, states:

> If the incumbent whose office has become vacant was elected to office as the nominee of a political party, the municipal committee of the political party of which the incumbent was the nominee shall . . . present to the governing body the names of three nominees for the selection of a successor to fill the vacancy. The governing body shall . . . appoint one of

---

[5] The parties agree that subsection (b) applies because of the time left in Yamakaitis' unexpired 8th Ward councilmember term. N.J.S.A. 40A:16-4, which deals with vacancies in offices filled through "regular municipal elections," contains nearly identical language.

the nominees as the successor to fill the vacancy.  If the governing body fails to appoint one of the nominees within the time prescribed herein, the municipal committee . . . shall . . . appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately.  If the municipal committee which nominated the incumbent fails to submit the names of the nominees . . . the governing body may . . . fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant.

[N.J.S.A. 40A:16-11 (emphases added).][6]

Undoubtedly, if Section 11 is triggered, and the political party acts expeditiously, the vacant seat will be filled in much shorter time with a member of the same political party chosen from a list of three.  One overriding purpose of the Vacancy Law — to fill vacancies quickly — would surely be served.

The Legislature expressly noted Section 11 of the Vacancy Law was a departure from prior law, which only required the governing body to fill the vacancy with a member of the same party as the incumbent.  By now requiring that the appointment be made from a list of three names submitted to the governing body by the party committee, Section 11 had the "apparent intent to

---

[6]    N.J.S.A. 40A:16-12, which involves vacancies in offices where the incumbent was not "the nominee of a political party" gives the governing body complete discretion to "fill the vacancy without regard to party."

limit the ability of the majority party to weaken minority representation . . . by choosing individuals with limited abilities or with political principles compatible with those of the majority party." Committee Reports at 4; see also Kukasch v. Cote, 257 N.J. Super. 48, 53 (App. Div. 1992) (citing Section 11 as enacted and the Committee Reports in noting the Legislature "mandated the governing body to appoint one of three nominees").

The Vacancy Law, however, has been significantly amended since its passage. See id. at 53–54 (citing Brubaker v. Borough of Ship Bottom, 246 N.J. Super. 55, 58, 60 (Law Div. 1990) (in turn discussing at length subsequent legislative history of the Vacancy Law)). We focus our attention primarily on amendments to sections 5 and 11.

Initially, Section 5(a) mandated that the governing body fill a vacancy occurring after September 1 of the next-to-last year of the incumbent's term. See N.J.S.A. 40A:16-5(a) (1979). If the governing body failed to act, the seat remained vacant for the balance of the unexpired term. See N.J.S.A. 40A:16-13 (1979). As initially enacted, the language in subsection (b) was identical to the current provision of the Vacancy Law. See Galloway Twp., 171 N.J. Super. at 578 (quoting N.J.S.A. 40A:16-5(b) (1979)). In Galloway Township, we contrasted the mandatory requirements of subsection (a) with the permissive language of subsection (b):

The use of the word "may" in the last sentence of subsection (b) in contrast to the use of the word "shall" in both subsections (a) and (b) when directing how the vacancy must be <u>permanently</u> filled for the balance of the unexpired term – in one case by appointment by the governing body (subsection (a)); in the other case by election at a general election (subsection (b)) – makes manifest the <u>discretionary nature of the authority of the governing body to appoint or not to appoint an interim successor</u>.

Accordingly, since the determination to fill or not <u>to fill the vacancy for the interim period</u> between the occurrence of the vacancy and the general election at which the permanent successor is selected <u>is a matter lying within the sound discretion of the governing body, the court is without the authority to compel the governing body to exercise such discretion by appointing an interim successor</u>.

[<u>Id.</u> at 578–79 (emphases added).]

This seemingly was consistent with the Legislature's preference to fill vacancies through elections, not appointments. <u>See</u> <u>Committee Reports</u> at 3.

Section 11 as initially enacted was much like the current version in that it required the party committee to submit three names and the governing body to select one of the three individuals to fill the vacancy. N.J.S.A. 40A:16-11 (1979). The original version did not provide for the political committee to "appoint one of the nominees as the successor" and swear in the person "immediately," as Section 11 currently permits. <u>Ibid.</u> And, as originally enacted, Section 11 mandated that if the political committee failed to submit

three names, "the governing body <u>shall</u> . . . fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant." <u>Ibid.</u> (emphasis added).

The Legislature made significant changes to both sections of the Vacancy Law less than one year later. <u>L.</u> 1980, <u>c.</u> 101 (1980). In Section 5(a), the amendment removed the mandate that the governing body make an appointment if the vacancy occurred after September 1 of the next-to-last year of a term and replaced the word "shall" with "may." <u>L.</u> 1980, <u>c.</u> 101, § 2. Section 5(b) was not amended and indeed never has been amended. As a result, from its inception, the Vacancy Law has provided that the governing body has discretion to fill a vacancy if it occurs at any time other than after September 1 of the incumbent's next-to-last year in office — the factual circumstances in this case.

The Sponsor's Statement to the 1980 amendment made clear that the legislation "clarifies the intent . . . that the appointment of a successor <u>shall be in all cases optional</u> to the municipal governing body. This [wa]s consistent with the design of that act and with both . . . committee statement[s] issued at the time Senate Bill 1217 was considered and passed by the Legislature." <u>Sponsor's Statement to S. 869</u> (emphasis added). The press release that accompanied the Governor's signing of <u>S.</u> 869 reaffirmed that in response to

our decision in Galloway Township, the amendment "clarif[ied] that appointments to fill vacancies in a municipal governing body are to be permissive, rather than mandatory." Press Release, Governor Brendan Byrne, Office of the Governor (Sept. 15, 1980) (on file with author).

In addition, the 1980 amendment to Section 11 gave the governing body discretion to fill the vacancy by appointment of one of the political party's nominees or not fill it if the party failed to tender nominees. L. 1980, c. 101, § 3. The Senate Committee Statement differentiated between the option to make any appointment — the amendment to Section 5 — and the manner in which the appointment was to be made — Section 11.

> It should be noted that the option extended to the governing body relates only to whether or not it will appoint a successor to a vacancy. Any appointment so made shall be made in the manner prescribed in the "Municipal Vacancy Law." The purpose of the bill is not to extend an option to the governing body with respect to the mechanics of the appointment.
>
> [S. Cnty. & Mun. Gov't Comm. Statement to S. 869 (Jan. 17, 1980) (emphasis added).]

The Legislature amended the Vacancy Law again in 1990, making no changes to Section 5, but significantly amending Section 11. First, it removed the governing body's discretion and provided it "shall . . . appoint one of the [political party's three] nominees as the successor to fill the vacancy." L.

18

1990, c. 57, § 1.  It also added the following language to Section 11:  "If the governing body fails to appoint one of the nominees within the time prescribed herein, the municipal committee . . . shall . . . appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately."  Ibid.[7]

Critically, the Assembly Municipal Government Committee's Statement explains the Legislature's intention:

> This bill changes the procedure for filling vacancies in municipal offices for which the incumbent was elected as a nominee of a political party.

---

[7]  The legislation also created confusion by amending N.J.S.A. 40A:16-13, which had read:  "If a governing body shall fail or decline to fill a vacancy in the membership of the governing body by appointment as provided in N.J.S.A. 40A:16-4 or 40A:16-5 within the time prescribed by N.J.S.A. 40A:16-11 or 12, the office shall remain vacant for the remainder of the term or until the election and qualification of a successor, as the case may be."  N.J.S.A. 40A:16-13 (1989).  As noted, this was in sync with the general scheme of the Vacancy Law's two tracks, i.e., whether the incumbent was elected in a nonpartisan election or as nominee of a political party.

The 1990 amendment eliminated the reference to Section 11, so that the statute now reads:  "If a governing body shall fail or decline to fill a vacancy in the membership of the governing body by appointment as provided in N.J.S.A. 40A:16-4 or 40A:16-5 within the time prescribed by N.J.S.A. 40A:16-12, the office shall remain vacant for the remainder of the term or until the election and qualification of a successor, as the case may be."  L. 1990, c. 57, § 2; N.J.S.A. 40A:16-13.  However, N.J.S.A. 40A:16-12 is expressly limited to nonpartisan elections, and it has nothing to do with the provisions of Section 5, where the incumbent was elected as the nominee of a political party.

> Under current law . . . the governing body . . . has the option of selecting one of the three persons recommended to fill the office by the . . . committee of the political party that nominated the incumbent. If the governing body does not choose one of the persons recommended . . . the office remains unfilled until the next election.
>
> This bill requires the . . . governing body . . . to select one of the three persons recommended by the . . . committee. The bill removes the ability of the remaining members of the governing body to preserve the vacancy and allow the governing body to be composed of fewer members than the law authorizes.
>
> [Assemb. Mun. Gov't Comm. Statement to A. 2592 (March 19, 1990) (emphases added).]

The amendatory comments of the Senate committee considering the legislation reflect an understanding that the "provisions that <u>A.</u> 2592 seeks to establish" were "mandatory." <u>S. Cnty. & Mun. Gov't Comm. Statement to A. 2592</u> (May 17, 1990).

C.

We cannot divine with absolute certitude what the Legislature intended by enacting the 1980 and 1990 amendments to the Vacancy Law, nor are we required to do so. In the face of ostensible contradictions, our "primary object is to ascertain the legislative design <u>with reasonable certainty</u>[.]" <u>Correa</u>, 458 N.J. Super. at 580 (quoting <u>Brewer v. Porch</u>, 53 N.J. 167, 174 (1969) (alteration in original) (emphasis added)).

A-1759-19

Defendants argue that in the first instance Section 5(b) vests appointment of an interim successor to fill a vacancy with the governing body in its discretion. Section 11's mandatory language applies only to the process by which the appointment is made. They contend that despite the Legislature's repeated amendments to the Vacancy Law, Section 5(b) has never been amended. Defendants argue that their construction of the two provisions harmonizes Section 5 and Section 11, and plaintiffs' interpretation renders Section 5(b) superfluous. We agree.

Courts "will 'neither rewrite a plainly[ ] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). Section 5(b)'s plain language has always provided that the governing body "may fill the vacancy temporarily by appointment as hereinafter provided." "When according to statutes their plain meaning, 'the word "may" ordinarily is permissive and the word "shall" generally is mandatory.'" In re State Bd. of Educ.'s Denial of Petition, 422 N.J. Super. 521, 532 (App. Div. 2011) (quoting Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000)). The plain meaning of Section 5(b) is that the

governing body may fill the interim vacancy, and, if it chooses to do so, it must follow the procedures outlined elsewhere in the Vacancy Law.

Further, it is a "well-established canon of statutory interpretation" that the Legislature is presumed to know "the judicial construction of its enactments." Johnson v. Scaccetti, 192 N.J. 256, 276 (2007) (quoting DiProspero, 183 N.J. at 494). When we issued our judgment in Galloway Township, 171 N.J. Super. at 578, contrasting the mandatory provisions of then Section 5(a) with the discretionary language of Section 5(b), the Legislature acted quickly through its 1980 amendment to Section 5(a), which was intended to "clarif[y] . . . that the appointment of a successor shall be in all cases optional to the municipal governing body." Sponsor's Statement to S. 869 3 (emphasis added). The Legislature left Section 5(b) intact. Our interpretation which provides the governing body with discretion in filling any interim vacancy, therefore, "is supported by a long period of legislative acquiescence or failure to amend the statute indicating agreement with the Court's holdings." State v. Chapland, 187 N.J. 275, 291 (2006).[8]

---

[8] In Booker v. Rice, we concluded that in a municipality holding regular municipal elections, i.e., governed by the provisions of N.J.S.A. 40A:16-4 and -12, the remaining members of the governing body were not required to fill a vacancy. 431 N.J. Super. 548, 552 (App. Div. 2013); see also Zimmer v. Castellano, 432 N.J. Super. 412, 416 (App. Div. 2013) (same). The language of N.J.S.A. 40A:16-4(b) is identical to Section 5(b).

Lastly, "[t]he Legislature is presumed to be familiar with its existing enactments and is presumed to intend that its newer enactments be harmonized with the existing ones, in light of the Legislature's purpose." Correa, 458 N.J. Super. at 580. In attempting to harmonize more recent amendments in the context of existing statutory provisions, as always "[w]e will 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void[,] or insignificant.'" Sanchez, 242 N.J. at 261 (second alteration in original) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).

According to plaintiffs, the governing body lacks discretion not to appoint an interim successor once the political committee acts by forwarding three nominees to fill the vacancy. Plaintiffs' interpretation may find support in Kukasch, where we said,

> the present statutory scheme mandates appointment by the governing body of one of the three names submitted by the municipal committee. The purpose of this amendment was to remove "the ability of the remaining members of the governing body to preserve the vacancy and allow the governing body to be composed of fewer members than the law authorizes."
>
> [257 N.J. Super. at 54 (quoting Brubaker, 246 N.J. Super. at 60).]

And, in Brubaker, the Law Division construed the 1990 amendment to section 11 as "strik[ing] a balance between totally removing any governing body

A-1759-19

discretion in the appointment process and leaving the governing body free to maneuver the vacancy to its advantage."  246 N.J. Super. at 60.  However, neither case addressed Section 5(b) at all, focusing instead solely on Section 11.

Moreover, both decisions seemingly overread the import of the 1990 amendment to Section 11.  As noted, prior to that amendment, although the political committee could submit three names to the governing body, the governing body was not required to choose any of them.  The 1990 amendment was intended to "change[] the procedure" to "require[] the . . . governing body . . . to select one of the three persons recommended by the . . . committee."  Assem. Mun. Gov't Comm. Statement to A. 2592.  Moreover, the 1990 amendment to N.J.S.A. 40A:16-13 left intact the following operative language which ostensibly recognizes the governing body's ability to not appoint an interim successor:

> If a governing body shall fail or decline to fill a vacancy in the membership of the governing body by appointment as provided in . . . 40A:16-5 within the time prescribed by N.J.S.[A.] 40A:16-12, the office shall remain vacant for the remainder of the term or until the election and qualification of a successor, as the case may be.  (emphases added).

We do not assume the Legislature intended anything other than the plain language chosen.

 A-1759-19

The Legislature could have easily achieved the result urged by plaintiffs by simply amending Section 5(b) to say that the governing body "shall fill the vacancy temporarily by appointment." See, e.g., Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009) ("The Legislature knows how to draft a statute to achieve that result when it wishes to do so."). It is clear that plaintiffs' interpretation of the two provisions renders some of Section 5(b) superfluous. Plaintiffs offer no reasonable argument to the contrary. Defendants' interpretation, on the other hand, is consistent with the plain language of Sections 5(b) and 11.

We therefore reverse and vacate all three orders under review. As a result, the cross-appeal is moot.

Reversed and vacated on the appeal; the cross-appeal is dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION