SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Linden Democratic Committee v. City of Linden (A-30-21) (086255)**

**Argued April 25, 2022 -- Decided July 6, 2022**

**ALBIN, J., writing for a unanimous Court.**

In this appeal centered on the right of citizens to representation in local government, the Court considers how the governing body of a municipality must fill a vacated seat previously held by the nominee of a political party: Must it select one of the three candidates submitted by the political party to which the prior officeholder belonged, or may it keep the seat vacant until the next general election?

The City of Linden Municipal Council (City Council) consists of a council president and ten councilmembers, each of whom represents one of the City's ten wards. Each councilmember is elected by the citizens of a ward at a general election held in November to serve a three-year term.

In November 2017, Michele Yamakaitis, the nominee of the Democratic Party, was re-elected to a three-year term as the councilmember representing the 8th Ward. One year later, Yamakaitis was elected council president, and she resigned as councilmember to assume her new role. On the day of her resignation, the Linden city clerk forwarded a letter to Nicholas P. Scutari, Chairman of the Linden Democratic Committee, alerting him to Yamakaitis's resignation and to the process for filling the 8th Ward vacancy.

Chairman Scutari advised the city clerk that the Democratic Committee had met and selected three candidates, including Paul Coates, Jr., for the City Council's consideration to fill the vacant 8th Ward seat. The City Council rejected all three candidates submitted by the Linden Democratic Committee and adopted a Resolution to leave the 8th Ward seat vacant until the next general election, a position the mayor supported.

The Democratic Committee voted and swore in Coates to serve as the councilmember representing the 8th Ward, citing N.J.S.A. 40A:16-11 as the authority for that action. The City Council then exercised what the city attorney identified as "[its] right under [N.J.S.A. 40A:16-5(b)] to maintain a vacancy in the 8th Ward," and the City declined to recognize Coates as councilmember.

1

In February 2019, Coates and the Democratic Committee filed a three-count Verified Complaint and Order to Show Cause, alleging that defendants -- the City of Linden and its City Council -- had violated the Municipal Vacancy Law, N.J.S.A. 40A:16-1 to -23, by refusing to seat Coates as councilmember.

The Chancery Court agreed. The court therefore voided the Resolution to keep the seat vacant and directed that Coates be seated as the 8th Ward councilmember. The court also granted summary judgment in favor of Coates and the Democratic Committee on a claim brought under the New Jersey Civil Rights Act (CRA), along with attorneys' fees and costs; the court denied their attorneys' fee enhancement request, however.

Defendants appealed, challenging the court's findings under both the Vacancy Law and the CRA, and Coates and the Democratic Committee cross-appealed to challenge the denial of the enhancement. The Appellate Division reversed the Chancery Division's orders, determining that the City Council had the authority under N.J.S.A. 40A:16-5 to decline to fill the vacancy. 469 N.J. Super. 149, 168 (App. Div. 2021). The court also dismissed the CRA claim, rendering the cross-appeal moot. Ibid. The court therefore did not reach defendants' challenge to the findings of the Chancery Court on the CRA claim or the challenge by Coates and the Democratic Committee to the denial of the fee enhancement.

The Court granted certification. 249 N.J. 76 (2021).

**HELD:** In amending in 1990 Sections 11 and 13 of the Municipal Vacancy Law, N.J.S.A. 40A:16-11 and -13, the Legislature removed the governing body's discretion to keep vacant a seat previously occupied by a nominee of a political party. Instead, the Legislature empowered the municipal committee of the political party whose nominee previously occupied the vacant seat to submit three names to the governing body. N.J.S.A. 40A:16-11. Section 11 mandates that the governing body choose one of the municipal committee's three nominees.

1. The right of representation in the councils of government is one of the most fundamental precepts in our democracy. At stake here is the right of citizens to have a voice in their city government. The Municipal Vacancy Law provides procedures for filling vacancies in governing bodies of municipalities. The principal goals of the Vacancy Law were to ensure that appointments to fill vacancies should be expeditiously made and that the appointment process should not be used to thwart minority representation. Section 5 of the Vacancy Law states in part that "[t]he governing body may fill the vacancy temporarily by appointment as hereinafter provided." N.J.S.A. 40A:16-5(b) (emphases added). Importantly, the word "may" in that last sentence is modified by the term "hereinafter provided," which refers to statutes that follow 5(b), such as Sections 11 and 12. (pp. 14-17)

2

2.  Section 11 addresses the procedure for filling a vacancy of an officeholder who was the nominee of a political party, and Section 12 addresses the procedure for filling a vacancy of an officeholder unaffiliated with a political party.  See N.J.S.A. 40A:16-11, -12.  In Section 11, the Legislature conferred the power to fill the vacancy on the municipal committee of the political party, with the municipal governing body playing a limited role.  Thus, after Yamakaitis resigned as the councilmember of the 8th Ward, Section 11 mandated that (1) the Democratic Committee "shall . . . present to the governing body the names of three nominees for the selection of a successor to fill the vacancy"; (2) the City Council "shall . . . appoint one of the nominees as the successor to fill the vacancy"; and (3) if the City Council "fails to appoint one of the nominees within the time prescribed herein," the Democratic Committee "shall . . . appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately."  See N.J.S.A. 40A:16-11 (emphases added).  On its face, Section 11 seemingly leaves no discretion to the City Council to ignore the Democratic Committee's role in filling the seat previously held by a councilmember affiliated with the Democratic Party. (pp. 17-19)

3.  In contrast, Section 12 confers on the City Council the sole discretion whether to fill a seat previously held by a councilmember unaffiliated with a political party. N.J.S.A. 40A:16-12 provides that, "[i]f the incumbent whose office has become vacant was not elected to office as the nominee of a political party, the governing body may . . . appoint a successor to fill the vacancy without regard to party." (emphases added).  The contrast in the Legislature's use of the word "shall" in Section 11 and its use of the word "may" in Section 12 is telling -- particularly in the context of Section 13, which describes what occurs when the City Council fails to fill a vacancy of a councilmember unaffiliated with a political party.  See N.J.S.A. 40A:16-13.  Significantly, Section 13 does not discuss what occurs if the governing body fails to fill a vacancy of a councilmember affiliated with a political party because Section 11 covers the field with mandatory directives.  Section 5(b)'s "may . . . hereinafter provided" language gives the City Council discretion in Section 11 -- but limited discretion, such as the discretion to pick one of the three nominees submitted by the political party's municipal committee.  See N.J.S.A. 40A:16-11. (pp. 19-20)

4.  To the extent that any ambiguity exists concerning how the interlocking sections of the Municipal Vacancy Law were intended to work, the legislative history resolves any lingering doubt.  In 1979, the Legislature enacted the Law to ensure that appointments to fill vacancies be expeditiously made and that the appointment process not be used to thwart minority representation.  The 1979 version of Section 11 closely parallels Section 11 as presently written.  In 1980, the Legislature decided to chart a different course and gave discretion to the governing body in filling municipal vacancies by changing the word "shall" to "may" in Section 11.  But the

3

1980 amendment led to some unsatisfactory results, and the Legislature decided to restrict the discretion of the governing body in filling vacancies. In 1990, the Legislature revised Section 11, removing the discretion conferred on the governing body in 1980 by restoring the word "shall" and eliminating "may." The 1990 amendments thus required the governing body to select from among the three names submitted by the municipal committee of the political party. The 1990 amendments to the Vacancy Law also revised Section 13, removing any reference to Section 11. Under Section 13, as amended, the governing body has discretion only to keep vacant the seat of an unaffiliated officeholder. The Court reviews additional amendments made in 1990 and concludes that the clear intent was to constrain the discretion that the 1980 amendments gave to the governing body in replacing officeholders affiliated with a political party. (pp. 21-26)

5. The 1990 amendments to the Vacancy Law were intended to prevent precisely what the Linden City Council did in this case -- the arbitrary rejection of the three nominees presented by the Democratic Committee. By refusing to seat a nominee of the Democratic Committee, the governing body denied the citizens of a ward representation in their municipal government. (pp. 27-28)

6. When councilmember Yamakaitis -- a nominee of the Democratic Party -- vacated her seat as the representative of the 8th Ward, Section 11 of the Vacancy Law required the Democratic Committee to present to the City Council "the names of three nominees for the selection of a successor to fill the vacancy." N.J.S.A. 40A:16-11. The Democratic Committee did so. The statute then mandated that the City Council "within 30 days after the occurrence of the vacancy, appoint one of the nominees as the successor to fill the vacancy." Ibid. The City Council failed to do so. In that circumstance, Section 11 instructed that the Democratic Committee "shall, within the next 15 days, appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately." Ibid. The Democratic Committee voted to have Paul Coates, Jr., represent the 8th Ward and swore him in to serve as a councilmember. See ibid. The members of the City Council, as well as the mayor, had no lawful authority to deny Coates a seat on the Council or to deprive the citizens of the 8th Ward their right of representation in their municipal government. The City Council did not have the authority to keep the 8th Ward council seat vacant for ten months until the next general election. (pp. 28-29)

**REVERSED and REMANDED to the Appellate Division for consideration of the issues not previously reached on appeal.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE ALBIN's opinion.**

4

SUPREME COURT OF NEW JERSEY
A-30 September Term 2021
086255

Linden Democratic Committee,

Plaintiff,

and

Paul Coates, Jr.,

Plaintiff-Appellant,

v.

City of Linden and
City of Linden Municipal Council,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
469 N.J. Super. 149 (App. Div. 2021).

| Argued | Decided |
|---|---|
| April 25, 2022 | July 6, 2022 |

Louis N. Rainone argued the cause for appellant
(Rainone Coughlin Minchello, attorneys; Louis N.
Rainone, David L. Minchello, Matthew R. Tavares, and
Brian P. Trelease, on the briefs).

Victoria A. Lucido argued the cause for respondents
(Aloia Law Firm, attorneys; Victoria A. Lucido and
Andrea M. Beckford, of counsel and on the brief, and
Brian J. Aloia, on the brief).

1

The Municipal Vacancy Law (Vacancy Law), N.J.S.A. 40A:16-1 to -23, sets forth the procedures for filling vacancies on a municipal governing body -- procedures ultimately designed to ensure the right of citizens to representation in local government.  The question in this appeal concerns the requisite procedure for filling the vacated seat previously held by the nominee of a political party.  Is the governing body mandated to select one of the three candidates submitted by the municipal committee of the political party to which the prior officeholder belonged, or does the governing body have full discretion to keep the seat vacant until the next general election?

In this case, the representative of the 8th Ward on the City of Linden Municipal Council (City Council) -- a member of the Democratic Party -- resigned from her position ten months before the next general election. Plaintiff Paul Coates, Jr., claims that the Linden Democratic City Committee (Democratic Committee) had the authority to fill that seat, while the City Council claims that it had the authority to keep that seat vacant until the next election.  Each invokes the Vacancy Law as the source of its power.  The ultimate resolution of that dispute is a matter of statutory interpretation.

After the 8th Ward councilmember resigned, the Democratic Committee nominated three individuals from whom the City Council could choose a successor. The City Council, however, refused to fill the vacancy with any of the submitted nominees and voted to leave the seat open for ten months until the next general election.

In response, the Democratic Committee selected Paul Coates, Jr. -- one of its three nominees -- to fill the vacancy, but the City Council refused to seat him. The Democratic Committee and Coates then brought an action in the Superior Court, Chancery Division, to compel the City Council to accept Coates as the 8th Ward's representative. The Chancery Division -- relying on N.J.S.A. 40A:16-11 (Section 11) of the Vacancy Law -- granted relief, ordering that Coates be seated as a member of the City Council. The Appellate Division -- relying on N.J.S.A. 40A:16-5 (Section 5) -- reversed the Chancery Division, concluding that the City Council had the ultimate authority whether to fill the vacant seat. Linden Democratic Comm. v. City of Linden, 469 N.J. Super. 149, 168 (App. Div. 2021).

We now hold that the Appellate Division's interpretation of the Vacancy Law cannot be squared with the plain language of the statutory scheme or its legislative history.

In amending Section 11 and N.J.S.A. 40A:16-13 (Section 13) of the Vacancy Law in 1990, the Legislature removed the governing body's discretion to keep vacant a seat previously occupied by a nominee of a political party. Instead, the Legislature empowered the municipal committee of the political party whose nominee previously occupied the vacant seat to submit three names to the governing body. N.J.S.A. 40A:16-11. Section 11 mandates that the governing body choose one of the municipal committee's three nominees. Ibid.

Under the 1990 amendments to the Vacancy Law, members of the governing body may not deny a member of the opposite political party or a dissident faction of a political party a seat on that legislative council. See L. 1990, c. 57. Simply stated, the 1990 amendments constrain the majority party from arbitrarily depriving the minority party or a party's dissident faction from representation on the governing body.

The Linden City Council's decision not to fill the empty seat deprived the citizens of the 8th Ward of Linden of representation on their legislative body. That outcome is wholly inconsistent not only with the Legislature's intent in enacting the 1990 amendments, see S. Cnty. & Mun. Gov't Comm. Statement to A. 2592 (May 17, 1990), but also with the general guarantee of

4

our laws to ensure representation to all citizens within a municipality, cf. Tumpson v. Farina, 218 N.J. 450, 468 (2014).

For reasons more fully explained, we reverse the judgment of the Appellate Division.

## I.

The City of Linden operates under a form of government in which the mayor exercises executive power and the City Council exercises legislative power. See N.J.S.A. 40A:61-1 to -8.[1] The City Council consists of a council president and ten councilmembers, each of whom represents one of the City's ten wards. Linden, N.J., Mun. Code ch. 2, art. II, § 2-5.1. Each councilmember is elected by the citizens of a ward to serve a three-year term, and the mayor and council president are each elected to serve a four-year term after a city-wide contest. Ibid. General elections are conducted in November for those offices. N.J.S.A. 40:69A-150; see also N.J.S.A. 40:45-7.1.

In November 2017, Michele Yamakaitis, the nominee of the Democratic Party, was re-elected to a three-year term as the councilmember representing

---

[1] "The mayor may participate in any deliberation of the council and, on any occasion where the council is unable to agree with respect to the adoption of an ordinance or resolution," the mayor has the power to cast the tie-breaking vote. N.J.S.A. 40A:61-4(c).

5

the 8th Ward.[2]  One year later, Yamakaitis was elected council president.  She resigned as the councilmember for the 8th Ward, effective midnight, December 31, 2018, with two years remaining in her term, to assume her position as council president.  That vacancy left the citizens of the 8th Ward without a representative on the City Council.

That same day, December 31, the Linden city clerk forwarded a letter to Nicholas P. Scutari, Chairman of the Linden Democratic Committee, alerting him to Yamakaitis's resignation and to the process for filling the 8th Ward vacancy.[3]  On January 11, 2019, Chairman Scutari advised the city clerk that the Democratic Committee had met and selected three candidates, including Paul Coates, Jr., for the City Council's consideration to fill the vacant 8th Ward seat.

At a contentious public meeting on January 15, 2019, the City Council rejected all three candidates submitted by the Linden Democratic Committee

---

[2]  The facts presented here are largely undisputed and are derived from the parties' pleadings and submissions before the Union County Superior Court, Chancery Division.

[3]  Under N.J.S.A. 40A:16-11, when a vacancy occurs on a municipal governing body by resignation of a member of a political party, "the municipal committee of the political party" presents three nominees to the governing body as a potential successor.  The Constitution and By-Laws of the Linden Democratic City Committee provide that the Democratic Committee is the "official representative of the Democratic party."

and decided to leave the 8th Ward seat vacant. During the meeting, Daniel Yamakaitis, President of the 8th Ward Democratic Club, complained that the Democratic Committee had "disrespected" the Club by rebuffing its recommended candidates and accused Chairman Scutari of acting arbitrarily. Mr. Yamakaitis called for the seat to remain vacant. The mayor criticized Chairman Scutari for not consulting with Council President Yamakaitis about her replacement, stating that "no one is going to dictate to this governing body what . . . they should do." The mayor encouraged the Council "not to fill the vacancy." A public member expressed that the three candidates submitted by the Democratic Committee were "very qualified" and that the Council should not engage in "political retribution" at the expense of the residents of the 8th Ward.

The Council adopted Resolution 2019-73, leaving the 8th Ward seat vacant until the next general election. The comments at the hearing made clear the deep rift within the Linden Democratic Party.

On January 28, 2019, the mayor issued a letter to all councilmembers and department heads stating that any candidate selected and sworn in by the Democratic Committee as the 8th Ward's representative would not be recognized as a member of the City Council. The letter related that the city attorney "has issued a legal opinion that confirms [the] Council's right to

7

maintain a vacancy until the November 2019 General Election" pursuant to N.J.S.A. 40A:16-5(b).

Despite the action taken by the City Council, Chairman Scutari advised the city clerk that, on February 6, 2019, the Democratic Committee had voted and sworn in Coates to serve as the councilmember representing the 8th Ward. Chairman Scutari cited to N.J.S.A. 40A:16-11 as the authority for the Democratic Committee to fill the vacancy.

The city attorney wrote to Chairman Scutari, stating that the City Council had "exercised [its] right under [N.J.S.A. 40A:16-5(b)] to maintain a vacancy in the 8th Ward" and therefore the City would not recognize Coates as the councilmember for the 8th Ward.

II.

A.

On February 7, 2019, Paul Coates and the Linden Democratic Committee filed a three-count Verified Complaint and Order to Show Cause in the Superior Court, Chancery Division, alleging that defendants, the City of Linden and the Linden Municipal Council, violated the Municipal Vacancy Law by refusing to seat Coates as the 8th Ward's councilmember. They sought an order voiding Resolution 2019-73 and declaring Coates as the 8th Ward's rightful representative on the City Council. They also sought an order

8

declaring that defendants violated Coates's substantive rights under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-2(c).  Coates and the Democratic Committee submitted a request for attorneys' fees and costs in the event they succeeded on their CRA claim.

The Honorable Katherine Dupuis, P.J.Ch., denied the request for preliminary injunctive relief but later granted the Order to Show Cause, finding that defendants violated the Municipal Vacancy Law.  Judge Dupuis voided Resolution 2019-73 and directed that Coates be seated as the 8th Ward councilmember.

The court also granted summary judgment in favor of Coates and the Democratic Committee on their CRA claim, finding that defendants denied Coates his substantive right -- a right conferred by the Vacancy Law -- to be seated as a member of the City Council.  Judge Dupuis focused on the 1990 amendments to the Vacancy Law, including Section 11, in reasoning that the Legislature "intended to prohibit the municipal governing board from maintaining a vacancy."  She concluded that the City Council failed to fill the vacant seat in the 8th Ward in accordance with the Vacancy Law.  On the CRA claim, the court awarded Coates and the Democratic Committee $110,236.50 in attorneys' fees and $451.20 in costs, but denied their attorneys' fee enhancement request.

Defendants appealed the court's rulings adverse to them; Coates and the Democratic Committee cross-appealed the denial of their fee enhancement.

B.

The Appellate Division determined that the Linden City Council had the authority under Section 5 of the Vacancy Law to decline to fill the 8th Ward vacancy and accordingly reversed the Chancery Division's orders. Linden Democratic Comm., 469 N.J. Super. at 168.[4] The appellate court identified its interpretive task as "constru[ing] seemingly ambiguous provisions of the [Vacancy Law]" -- Section 5 and Section 11. Id. at 152. The court declared that "[i]n the face of ostensible contradictions, [its] 'primary object is to ascertain the legislative design with reasonable certainty.'" Id. at 165 (emphasis omitted) (quoting Correa v. Grossi, 458 N.J. Super. 571, 580 (App. Div. 2019)).

The Appellate Division found that "Section 5(b) vests appointment of an interim successor to fill a vacancy with the governing body in its discretion." Id. at 165; see also id. at 160 (quoting N.J.S.A. 40A:16-5(b) ("The governing body may fill the vacancy temporarily by appointment as hereinafter provided." (emphasis omitted))). The court acknowledged, however, Section

_____

[4] The court took judicial notice that Coates lost the Democratic primary election for the 8th Ward seat in June 2019. Id. at 153 n.1.

10

11's mandatory language: "The governing body shall . . . appoint one of the nominees as the successor to fill the vacancy." Id. at 160 (emphasis omitted) (ellipsis in original) (quoting N.J.S.A. 40A:16-11). To harmonize the two statutes, the court reasoned that "Section 11's mandatory language applies only to the process by which the appointment is made" and does not divest the City Council of its ultimate discretion to leave a seat vacant. Id. at 165. Referring to the 1990 amendments, the Appellate Division asserted that, although Section 11 was altered to require the City Council to select one of the three names submitted by the political committee, Section 13 "left intact . . . language which ostensibly recognizes the governing body's ability to not appoint an interim successor." Id. at 167. The court concluded that it would not interpret the Vacancy Law in a way that rendered some of Section 5(b)'s language superfluous. Id. at 168.

The Appellate Division dismissed Coates's and the Democratic Committee's CRA claim, which rendered their cross-appeal for an enhanced fee moot. Ibid.

C.

We granted Coates's petition for certification.[5] 249 N.J. 76 (2021).

---

[5] Plaintiff Linden Democratic Committee did not join Coates's petition for certification.

III.

A.

Coates argues that the Appellate Division's erroneous interpretation of the Vacancy Law has arrogated to the Linden City Council the unbridled authority to maintain a vacancy in the 8th Ward and to deprive its citizens of representation in their local government. Coates emphasizes that the 1990 amendments to Sections 11 and 13 of the Vacancy Law were intended to limit the governing body's discretion to refuse to fill a vacant seat that was previously held by a member of a minority party or a dissident faction of the majority party, as occurred here. He maintains that Section 11, as amended, mandated that the City Council appoint one of the three candidates selected by the Linden Democratic Committee. Coates declares that the Appellate Division's attempted harmonization of Sections 5 and 11 has rendered the political committee's role in quickly filling vacant council seats "subservient to the whims of the governing body." That result, he concludes, is at odds with the plain language of the revised Vacancy Law and its legislative history.

B.

Defendants urge this Court to affirm the decision of the Appellate Division. Defendants state that Section 5(b), "from its inception" to the present day, "vest[s] the governing body with the sound discretion to fill a

vacancy" on the City Council. They come to that conclusion, as did the Appellate Division, based on Section 5(b)'s language that "[t]he governing body may fill the vacancy temporarily by appointment as hereinafter provided." (emphasis added). Defendants posit that Section 11 is triggered only if the City Council decides to fill the vacancy, in which case the Council then would have to appoint one of the three people named by the Democratic Committee. According to defendants, if Section 11 were construed to mandate that the City Council select from the Democratic Committee's nominees, then Section 5(b)'s language granting the Council discretion not to fill the vacancy "would be rendered superfluous." Defendants submit that the 1990 amendments to Sections 11 and 13 are "a red herring" because the Legislature did not amend "the pertinent provision of the [Vacancy Law]" -- Section 5(b).

## IV.

### A.

Our standard of review is de novo. "[W]e owe no deference 'to the Appellate Division's or trial court's interpretive conclusions' about the meaning of a statute," such as the Vacancy Law. See DCPP v. J.R.-R., 248 N.J. 353, 368 (2021) (quoting DCPP v. Y.N., 220 N.J. 165, 177 (2014)).

In construing the Vacancy Law, we are guided by familiar canons of statutory interpretation. Our paramount goal in interpreting a statute is to

13

determine the Legislature's intent.  DiProspero v. Penn, 183 N.J. 477, 492 (2005).  In doing so, "generally, the best indicator of that intent is the statutory language."  Ibid. (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)).

To give sense to the whole of a legislative scheme, we must read related statutory provisions in context -- giving each part meaning and rendering no part superfluous.  In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014); see also Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020).  When a plain reading of a statute leads to two plausible interpretations, and one interpretation is seemingly "at odds with the overall statutory scheme, we may turn to extrinsic evidence," such as "the statute's legislative history . . . or the stated public policy that gave rise to the legislation."  McClain v. Bd. of Rev., Dep't of Labor, 237 N.J. 445, 456 (2019) (citing DiProspero, 183 N.J. at 492-93).  Laws that guarantee citizen representation in their government are generally construed liberally to accomplish that end.  Cf. Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952).

B.

The right of representation in the councils of government is one of the most fundamental precepts in our democracy -- and, indeed, was one of the animating principles that gave rise to our Republic.  See Reynolds v. Sims, 377 U.S. 533, 564-65 (1964).  Perhaps no level of the government more directly

14

touches the lives of the people than municipal government. Although this appeal may arise from a partisan scrum between factions within a political party, at stake is an important principle: the right of citizens to have a voice in their city government.

The Municipal Vacancy Law, enacted in 1979, L. 1979, c. 83, provides procedures for filling vacancies in governing bodies of municipalities. The principal goals of the Vacancy Law were to "provide a more comprehensive approach to the filling of municipal vacancies," and to ensure that "[a]ppointments to fill vacancies should be . . . expeditiously made," and that the appointment process "should not be used to thwart minority representation." A. Mun. Gov't Comm. Statement to S. 1217 1; see also S. Cnty. & Mun. Gov't Comm. Statement to S. 1217 1 (Dec. 4, 1978).

Since 1979, the Vacancy Law has gone through several iterations. We begin with the Vacancy Law as it is presently written and examine the various interlocking statutes and how they advance the Legislature's stated policy objectives. Four statutes in the Vacancy Law -- Sections 5, 11, 12, and 13 -- are pertinent to our analysis.

15

The parties agree that the members of the Linden City Council are chosen at "general elections," and therefore our starting point is Section 5.[6] The parties also agree that filling the vacancy caused by councilmember Yamakaitis's resignation is governed by Section 5(b).[7]

That statute, in relevant part, provides:

> [w]henever a vacancy occurs . . . in the membership of the governing body of a municipality holding general elections, the vacancy shall be filled in the following manner:
>
> . . . .
>
> b.  If the vacancy occurs [before September 1 of the year preceding the expiration of the term], the vacancy shall be filled for its unexpired term at the next general election to be held not less than 60 days after the occurrence of the vacancy.  The governing body <u>may</u> fill the vacancy temporarily by appointment as <u>hereinafter provided</u>.
>
> [N.J.S.A. 40A:16-5 (emphases added).]

Importantly, the word "may" in the last sentence of Section 5(b) is modified by the term "hereinafter provided."  "[T]he word 'may' ordinarily

---

[6] N.J.S.A. 40A:16-4 addresses the procedures for regular municipal elections. Regular municipal elections are held in May, and candidates are nominated by direct petition signed by at least one percent of voters.  General elections are held in November.  <u>See</u> <u>Sponsors' Statement to S. 1217</u> 15 (<u>L.</u> 1979, <u>c.</u> 83).

[7] Due to the timeline of Yamakaitis's resignation in relation to the next general election, Section 5(a) is inapplicable.

reflects an intent to confer discretionary authority," but that "rule" "is merely an aid in determining" a statute's meaning.  State v. Ercolano, 335 N.J. Super. 236, 244 (App. Div. 2000).

Section 5(b)'s "hereinafter provided" language refers to statutes that follow 5(b), such as Sections 11 and 12.  Section 11 addresses the procedure for filling a vacancy of an officeholder who was the nominee of a political party, and Section 12 addresses the procedure for filling a vacancy of an officeholder unaffiliated with a political party.  See N.J.S.A. 40A:16-11, -12. The Legislature took very different approaches to a governing body's authority to fill the seat of a political party nominee as opposed to a nominee unaffiliated with a political party.  In Section 11, the Legislature conferred the power to fill the vacancy on the municipal committee of the political party, with the municipal governing body playing a limited role.  In contrast, in Section 12, the Legislature ceded the authority to fill the vacancy to the governing body.

Section 11 provides:

> If the incumbent whose office has become vacant was elected to office as the nominee of a political party, the municipal committee of the political party of which the incumbent was the nominee shall, no later than 15 days after the occurrence of the vacancy, present to the governing body the names of three nominees for the selection of a successor to fill the vacancy.  The

17

governing body <u>shall</u>, within 30 days after the occurrence of the vacancy, appoint one of the nominees as the successor to fill the vacancy. If the governing body fails to appoint one of the nominees within the time prescribed herein, the municipal committee that named the three nominees <u>shall</u>, within the next 15 days, appoint one of the nominees as the successor to fill the vacancy, and such person <u>shall</u> be sworn in immediately. If the municipal committee which nominated the incumbent fails to submit the names of the nominees within the time prescribed herein, the governing body may, within the next 15 days, fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant.

[N.J.S.A. 40A:16-11 (emphases added).]

After Yamakaitis resigned as the councilmember of the 8th Ward, Section 11 mandated that (1) the Democratic Committee "shall . . . present to the governing body the names of three nominees for the selection of a successor to fill the vacancy"; (2) the City Council "shall . . . appoint one of the nominees as the successor to fill the vacancy"; and (3) if the City Council "fails to appoint one of the nominees within the time prescribed herein," the Democratic Committee "<u>shall</u> . . . appoint one of the nominees as the successor to fill the vacancy, and such person <u>shall</u> be sworn in immediately." <u>See</u> <u>ibid.</u> (emphases added).

On its face, Section 11 seemingly leaves no discretion to the City Council to ignore the Democratic Committee's role in filling the seat

18

previously held by a councilmember affiliated with the Democratic Party.  In contrast, Section 12 confers on the City Council the sole discretion whether to fill a seat previously held by a councilmember unaffiliated with a political party.

Section 12 provides:

> If the incumbent whose office has become vacant was not elected to office as the nominee of a political party, the governing body may, within 30 days of the occurrence of the vacancy, appoint a successor to fill the vacancy without regard to party.
>
> [N.J.S.A. 40A:16-12 (emphases added).]

The contrast in the Legislature's use of the word "shall" in Section 11 and its use of the word "may" in Section 12 is telling -- particularly in the context of Section 13, which describes what occurs when the City Council fails to fill a vacancy of a councilmember unaffiliated with a political party.

Under Section 13,

> [i]f a governing body shall fail or decline to fill a vacancy in the membership of the governing body by appointment as provided in N.J.S.A. 40A:16-4 or 40A:16-5 within the time prescribed by N.J.S.A. 40A:16-12, the office shall remain vacant for the remainder of the term or until the election and qualification of a successor, as the case may be.
>
> [N.J.S.A. 40A:16-13 (emphasis added).]

19

Significantly, Section 13 does not refer to Section 11. Section 13 does not discuss what occurs if the governing body fails to fill a vacancy of a councilmember affiliated with a political party because Section 11 covers the field with mandatory directives.

The Legislature could not have -- as the Appellate Division suggested -- inserted the word "shall" in Section 5(b) for both Sections 11 and 12 to work sensibly. See Linden Democratic Comm., 469 N.J. Super. at 168. If Section 5(b) read, "The governing body 'shall' fill the vacancy temporarily by appointment as hereinafter provided," that statute would conflict with Sections 12 and 13, which grant discretion to the governing body to decline to fill a vacancy of a councilmember unaffiliated with a political party.

Section 5(b)'s "may . . . hereinafter provided" language gives the City Council discretion in Section 11 -- but limited discretion. For example, the governing body has the discretion to pick one of the three nominees submitted by the political party's municipal committee. See N.J.S.A. 40A:16-11. In addition, if the political party's municipal committee does not submit the names of any nominees to the governing body, then the governing body can select a councilmember from the political party that vacated the seat or decide not to fill the vacancy. See ibid. Therefore, the term "may" in Section 5(b) is necessary to account for those contingencies.

To the extent that any ambiguity exists concerning how the interlocking sections were intended work, the legislative history resolves any lingering doubt.

C.

1.

In 1979, the Legislature enacted the Municipal Vacancy Law to "provide a more comprehensive approach to the filling of municipal vacancies" than had the predecessor statutory scheme. See A. Mun. Gov't Comm. Statement to S. 1217 1. Two objectives of the new law were to ensure that appointments to fill vacancies "be expeditiously made" and that the appointment process "not be used to thwart minority representation." Ibid.

The 1979 version of Section 11 for filling vacancies closely parallels Section 11 as presently written. For example, in 1979, Section 11 provided that "the municipal committee of the political party of which the incumbent was the nominee shall . . . present to the governing body the names of three nominees for the selection of a successor to fill the vacancy," and that "[t]he governing body shall . . . appoint one of the nominees as the successor to fill the vacancy." L. 1979, c. 83, § 1 (emphases added).[8] The Assembly

---

[8] The final sentence of Section 11 as originally enacted stated:

21

Committee Statement attached to the proposed bill, later enacted as the Vacancy Law, noted that Section 11 "would establish a new procedure to be followed which would further limit the discretion of the governing body in making appointments to fill vacancies where the incumbent was the nominee of a party." A. Mun. Gov't Comm. Statement to S. 1217 4. The Assembly Committee Statement further indicated that "[t]he apparent intent [of Section 11] is to limit the ability of the majority party to weaken minority representation on the body by choosing individuals with limited abilities or with political principles compatible with those of the majority party." Ibid.

Since 1979, Sections 11, 12, and 13 have been amended, but Section 5(b) has remained largely intact in its original form. Compare L. 1980, c. 101, § 2, with L. 1990, c. 57, §§ 1 to 3.

---

> If the municipal committee which nominated the incumbent fails to submit the names of the nominees within the time prescribed herein, the governing body shall . . . fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant.
>
> [L. 1979, c. 83, § 1 (emphasis added).]

The current version of that sentence uses the word "may" instead. N.J.S.A. 40A:16-11 (emphasis added).

2.

In 1980, the Legislature decided to chart a different course and gave discretion to the governing body in filling municipal vacancies. The Legislature amended Section 11 by removing the word "shall" and replacing it with the word "may" in key places. L. 1980, c. 110, § 3. The revised Section 11, for example, stated that "[t]he governing body may . . . appoint one of the nominees [of the municipal committee of the political party] as the successor to fill the vacancy." Ibid. (emphasis added). The Senate Sponsors' Statement attached to the bill that became the revised Section 11 indicated that the "bill clarifies the intent of the 'Municipal Vacancy Law' that the appointment of a successor shall be in all cases optional to the municipal governing body." Sponsors' Statement to S. 869 (L. 1980, c. 101). Through that revision, "the governing body's obligation to appoint one of the nominees became optional instead of mandatory." Brubaker v. Borough of Ship Bottom, 246 N.J. Super. 55, 58 (Law. Div. 1990) (citing Galloway Twp. Republican League v. White, 171 N.J. Super. 576 (App. Div. 1980)).

"Apparently, the 1980 amendment led to some unsatisfactory results brought about by the majority party's ability to exercise the option to appoint or to await the next general election depending on how it evaluated its political advantage." Id. at 59. Such "abuses came to the attention of the Legislature,"

23

which then decided to amend again the Vacancy Law to restrict the discretion of the governing body in filling vacancies. Ibid.

3.

In 1990, the Legislature revised Section 11, removing the discretion conferred on the governing body by replacing the word "may" with "shall." L. 1990, c. 57, § 1. The 1990 amendments required the governing body to select from among the three names submitted by the municipal committee of the political party. See Brubaker, 246 N.J. Super. at 59; N.J.S.A. 40A:16-11 ("The governing body shall . . . appoint one of the nominees as the successor to fill the vacancy."). The 1990 amendments to the Vacancy Law also revised Section 13, which as originally enacted provided that if the governing body did not fill a vacancy under Section 5 within the time limitations of Sections 11 or 12, the office shall remain vacant. N.J.S.A. 40A:16-13 (1979). The amendments removed from Section 13 any reference to Section 11. L. 1990, c. 57, § 2. By doing so, the Legislature distinguished between filling the vacancies of officeholders affiliated with a political party and filling the vacancies of officeholders unaffiliated with a political party. Under Section 13, as amended, the governing body has discretion only to keep vacant the seat of an unaffiliated officeholder.

The Senate Committee statement to the 1990 amendments expressed the legislative objective in revising the Vacancy Law: "The bill removes the ability of the remaining members of the governing body to preserve the vacancy and allow the governing body to be composed of fewer members than the law authorizes." S. Cnty. & Mun. Gov't Comm. Statement to A. 2592. The Senate Committee statement also indicated that it "amended the bill by removing from N.J.S.A. 40A:16-13 a reference to N.J.S.A. 40A:16-11, which creates an inconsistency with respect to the mandatory provisions that [the amendments] seek[] to establish." Ibid. (emphasis added).

The 1990 amendments also added the following language to Section 11, which did not appear in the original enactment of the Vacancy Law:

> If the governing body fails to appoint one of the nominees within the time prescribed herein, the municipal committee that named the three nominees shall . . . appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately.
>
> [L. 1990, c. 57, § 1.]

And,

> If, on the effective date of this act, the governing body had previously received from the municipal committee the names of three nominees to fill any such vacancy and had not filled the vacancy, the governing body . . . shall appoint one of the nominees as the successor to fill the vacancy.

25

[Ibid. (emphasis added).]

The clear intent behind the 1990 amendments to Section 11 was to constrain the discretion that the 1980 amendments gave to the governing body in replacing officeholders affiliated with a political party. See Sponsors' Statement to A. 2592 (L. 1990, c. 57); A. Mun. Gov't Comm. Statement to A. 2592 (March 19, 1990); S. Cnty. & Mun. Gov't Comm. Statement to A. 2592.

## V.

## A.

To understand how a vacancy is filled when the incumbent was the nominee of a political party requires a review of all the relevant and interconnected provisions: Sections 5(b), 11, 12, and 13. The 1990 amendments to Sections 11 and 13 mandated that the governing body choose from among the three nominees submitted by the political committee. That conclusion is buttressed by the Vacancy Law's legislative history, which reveals that the Legislature intended to "remove[] the ability of the remaining members of the governing body to preserve the vacancy." See S. Cnty. & Mun. Gov't Comm. Statement to A. 2592.

Granting the governing body unfettered discretion whether to fill a seat vacated by an officeholder affiliated with a political party -- a consequence of the 1980 amendments -- led to political calculations and abuses that the

26

Legislature intended to correct. See Brubaker, 246 N.J. Super. at 59. In passing the 1990 amendments, the Legislature intended to prevent the scenario where a majority of the governing body, if, say, composed of members of the Democratic Party, could reject the three nominees of the Republican Party's municipal committee to fill a seat vacated by an elected Republican officeholder. That form of majority oppression of the minority party, which then leaves citizens of a certain sector of a municipality without representation, is the very vice that the Vacancy Law was intended to foreclose. See A. Mun. Gov't Comm. Statement to S. 1217 4 (stating that the apparent purpose of Section 11 was to limit the majority party's ability "to weaken minority representation" by choosing only "individuals with political principles compatible with those of the majority party").

The 1990 amendments to the Vacancy Law were intended to prevent precisely what the Linden City Council did in this case -- the arbitrary rejection of the three nominees presented by the Democratic Committee.

The Appellate Division erred by viewing its interpretive task as only harmonizing Sections 5(b) and 11, without looking at the roles played by Sections 12 and 13 in the larger legislative scheme.

B.

The public hearing in this case revealed the factional strife within the Democratic Party in Linden and, more particularly, the conflict between the Linden City Council and the Linden Democratic Committee. Members of the City Council made clear in their remarks that they did not want to be limited to the Democratic Committee's nominees when a vacancy arose on the Council. However, the Vacancy Law sets forth the procedures for filling vacancies to avoid the very scenario that occurred here -- the governing body refusing to seat a nominee of a faction of a party, thus denying the citizens of a ward representation in their municipal government.

When councilmember Yamakaitis -- a nominee of the Democratic Party -- vacated her seat as the representative of the 8th Ward, Section 11 of the Vacancy Law required the Democratic Committee to present to the City Council "the names of three nominees for the selection of a successor to fill the vacancy." N.J.S.A. 40A:16-11. The Democratic Committee did so. The statute then mandated that the City Council "within 30 days after the occurrence of the vacancy, appoint one of the nominees as the successor to fill the vacancy." Ibid. The City Council failed to do so. In that circumstance, Section 11 instructed that the Democratic Committee "shall, within the next 15 days, appoint one of the nominees as the successor to fill the vacancy, and

28

such person shall be sworn in immediately." Ibid. The Democratic Committee voted to have Paul Coates, Jr., represent the 8th Ward and swore him in to serve as a councilmember. See ibid.

The members of the City Council, as well as the mayor, had no lawful authority to deny Coates a seat on the Council or to deprive the citizens of the 8th Ward their right of representation in their municipal government. The City Council did not have the authority to keep the 8th Ward council seat vacant for ten months until the next general election.

Accordingly, we reverse the judgment of the Appellate Division. Coates and the Democratic Committee succeeded on their civil rights claim before the Chancery Court and were awarded attorneys' fees and costs. In light of its judgment in favor of defendants, the Appellate Division did not reach defendants' challenge to the findings of the Chancery Court on the civil rights claim or to the award of attorneys' fees and costs. We therefore remand to the Appellate Division for consideration of those issues.

## VI.

For the reasons explained, we reverse the judgment of the Appellate Division and remand for proceedings consistent with this opinion.

29

CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE ALBIN's opinion.